**WINKLER–KOCH ENGINEERING CO. v. UNIVERSAL OIL PRODUCTS CO. (DELAWARE) et al.**

United States District Court
S. D. New York.
May 5, 1950.

See also 79 F.Supp. 1013.

Paul Kolisch, New York City, for plaintiff. J. Bernhard Thiess, Sidney Neuman, Robert W. Poore, Ralph E. Church, Jr., Chicago, Ill., J. Pierre Kolisch, New York City, of counsel.

Cravath, Swaine & Moore, New York City, for Shell Union Oil Corp. William Dwight Whitney, George S. Leonard, New York City, of counsel.

Chadbourne, Wallace, Parke & Whiteside, New York City, for Atlantic Refining Co. Leonard P. Moore, Edward R. Neaher, New York City, and Richard Chadwick-Collins, Philadelphia, Pa., of counsel.

Miles W. Newby, Jr., New York City, for Gasoline Products Co., Inc. Benjamin B. Schneider, Chicago, Ill., of counsel.

Townley, Updike & Carter, New York City, for Standard Oil Co. (Indiana). A. L. Hodson, Weymouth Kirkland, John C. Butler, Chicago, Ill., of counsel.

Oscar John Dorwin, New York City, for Texas Co. S. A. L. Morgan, Amarillo, Tex., Brady Cole, Houston, Tex., of counsel.

Cahill, Gordon, Zachry & Reindel, New York City, for M. W. Kellogg Co. Harold S. Glendening, New York City, of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Standard Oil Co. (New Jersey). Taggart Whipple, Porter R. Chandler, and Roger R. Clisham, New York City, of counsel.

M. S. Gibson, New York City, for Gulf Oil Corp. M. S. Gibson, New York City, Archie D. Gray, Houston, Tex., of counsel.

NEVIN, District Judge (sitting by designation).

There are a number of defendants in this action. Some having been heretofore dismissed I think there are now eight remaining. Some of counsel, both for plaintiff and the respective defendants, live in cities other than New York.

I asked the Calendar Commissioner, therefore, to have one of counsel for plaintiff, living in New York, and one of counsel, living in New York, for some one of the defendants to come here this morning, as I thought such representation would be sufficient for present purposes. In this connection, I may add that of counsel for the defendants, I asked the Calendar Commissioner to have someone present who is associated in the case with Mr. A. L. Hodson. This, for the reason that it was arranged at the conclusion of the oral arguments, as shown on page 347 of the transcript, that I should send any communications to Mr. Hodson and Mr. Neuman jointly, and that they would thereafter notify their associate counsel.

I have asked counsel to come in at this particular time for the following reasons:

I have been in New York for some days, but am today concluding my work here for the present. I have reached certain conclusions in the instant case and I thought it would expedite the matter if I would announce them here and now, with counsel for the respective parties present, and at the same time make some arrangements, tentative, at least, looking to the future disposition of the case. All of this, I felt could be accomplished more satisfactorily with counsel present here in court than by correspondence, though, of course, other counsel may communicate with me by letter after they had had an opportunity to read a transcript of the proceedings here today if they wish to do so. In that event, any communication should be addressed to me Care the United States District Court at Dayton, Ohio.

On August 18, 1948, an order approved by Judge Knox, was entered in this Court in this cause. That order reads in part as follows:

"Upon the complaint filed herein on March 16, 1945, the bill of particulars filed herein on April 19, 1948, and the answers of the respective defendants filed herein on June 17, 1948, and

"It appearing to the Court that the answers of the respective defendants have each raised the affirmative defenses of the statutes of limitations, and

"It further appearing to the Court that the attorneys for the plaintiff and for the respective defendants, with the object of promoting an early determination of this action, request and consent to a separate trial of the issues hereinafter defined presented by the affirmative defenses of the statutes of limitations, as evidenced by the sub-joined consent of said attorneys, * *

"It is therefore ordered, that the issues presented by the affirmative defenses of the statutes of limitations to the claim asserted in the particularized complaint be tried as separate issues in advance of the trial of the other issues of this action; that for the purposes of such separate trial the allegations of the Complaint and of the Bill of Particulars shall be taken as true; * * * and that any trial of the remaining issues in this action be postponed until such time as this Court may fix upon further application to this Court after final determination of the trial of the aforesaid separate issues."

After the entering of the foregoing order briefs were filed on behalf of each and all of the respective parties. Thereafter, on December 12, 1949, the cause came on for hearing, by way of oral argument on the "separate issues" referred to in the Order.

The oral arguments occupied the whole of two days. During the arguments there was filed with the Court, on December 13, 1949, a document containing "Stipulations of facts and presentation of issues entered into between counsel for the plaintiff and counsel for the respective defendants". This document was marked "Court's Exhibit 1" for the purposes of the "separate trial."

A detailed discussion of the various arguments presented or an analysis of the numerous cases cited would necessitate a lengthy decision unjustifiable, in the opinion of the Court, in the light of rulings already made.

In the view of the Court, it is necessary here only to state its conclusions, reached after a careful study of the briefs and arguments of counsel. These conclusions are as follows:

(1) The Court is of the opinion, and so finds, that the Federal Tolling Act of October 10, 1942, 56 Stat. 781, c. 589, suspended all existing State statutes of limitations applicable to this action.

In their brief (pp. 53–54) counsel for plaintiff state, "The effect of the Tolling Act was to suspend all limitations applicable to Federal Anti-Trust suits whether brought by the United States or by private litigants. Thus all suits not barred on October 10, 1942, were kept alive until June 30, 1945. Plaintiff having filed its Complaint on March 16, 1945, is entitled to the benefit of the Tolling Act, with the result that plaintiff may recover all damages occurring prior to October 10, 1942, which were not barred on that date. * * * Defendants' contention is that the Tolling Act was intended

to suspend limitations only in respect of suits brought by the United States".

In support of defendants' contention, Mr. Morgan of counsel for defendant The Texas Company, in his argument referred to certain correspondence between the Secretaries of War and Navy, the Attorney General and Mr. Arnold of the Department of Justice, and the President, as well as to other matters which he and other counsel relied upon on behalf of the respective defendants whom they represent.

However, in his oral argument, Mr. Morgan also stated, as shown on Pp. 124, et seq., of the transcript that, "I would not be fair to this Court, if I did not say here, this early in the argument, that in recent weeks there have been published, two Decisions, two opinions by District Courts directly contrary to the contention that we are making with reference to the construction of this Act. One is by a District Judge in Chicago, and another by a District Judge in Los Angeles. The Chicago case was Tiffin Building Corp. v. Balaban & Katz Corp. [87 F.Supp. 121], and others, and it has not been published * * *".

"Now the other case I think is a better considered opinion. It was by Judge Mathes of the Los Angeles court. He did not hold, as did Judge LaBuy, that he could not consider the legislative history. He held that he should consider it, and he did consider it. Then he said that the legislative history does not change the meaning of the plain language of the statutes, and therefore he held as did Judge LaBuy, that the statute is applicable to private actions for triple damages, just as the district judge in Chicago held.

"Needless to say, we think those decisions are wrong."

The cases to which Mr. Morgan referred have now been published. They are first, United West Coast Theatres Corporation v. South Side Theatres, 86 F.Supp. 109.

In the course of that decision and in discussing and in construing the legislative history of the Federal Tolling Act, Judge Mathes, of the District Court, refers to the fact, 86 F.Supp. at page 112: "The act of October 10, 1942, was recommended and re-quested by the Secretary of War, the Secretary of the Navy, the Attorney General, and approved by the President, because proceedings under the anti-trust laws would seriously interfere with the war effort. Such court investigations, suits, and prosecutions under the anti-trust laws unavoidably consume valuable time of executives and employees of corporations which are engaged in war work. Your committee believe that prosecutions of this matter at this time will be contrary to the national interest and security * * *" and after further reference to its legislative history he states that "Since 'Nothing in the legislative history * * * indicates any other purpose in Congress than that expressed by the words of the act', (citing numerous authorities) the Act is to be interpreted by 'giving the words their natural significance' " (and then he cites a number of cases). Which is to say that " 'civil proceedings under any existing statutes' means what it says (and then he cites some cases)."

And Judge Mathes held, as shown in the headnote on page 109 of 86 F.Supp.: "Under statute suspending the running of any existing statute of limitations applicable to violations of the anti-trust laws of the United States then indictable or subject to 'civil proceedings under any existing statutes' the quoted phrase must be given its natural meaning and includes actions by private persons. Act Cong. Oct. 10, 1942, 56 Stat. 781."

The next case is Tiffin Building Corp. v. Balaban & Katz Corp., 87 F.Supp. 121, decided by Judge LaBuy in the District Court for the Eastern District of Illinois. Judge LaBuy held, as shown on page 123 of 87 F. Supp., that "There is no limitation expressed in the legislative history and the words 'civil proceedings' should not be restricted in their meaning when neither the statute itself nor the legislative history expresses none. The court is of the opinion the Act of Congress of October 10, 1942 extends to private suits as well as to those brought by the government."

Since the oral argument there has been another decision construing the Federal Tolling Act. This is a decision by Judge

Miller in the United States District Court for the Western Division of Arkansas, the decision having been rendered on December 19, 1949, in the case of Russellville Canning Co. v. American Can Co., and now reported in the 87 F.Supp. 484. The Court in the Russellville Canning Company case came to the same conclusion as did the courts in the foregoing two cases. On page 500 of 87 F. Supp., Judge Miller says:

"As to this Act, it is defendant's position that it is applicable only to civil and criminal suits instituted on behalf of the United States Government. * * *

"Giving to the language used in this Act its usual and accepted meaning, the conclusion is irresistible that the suspension applies equally to private and Government actions. The parties to this suit draw different conclusions from the legislative history, but, in the opinion of the court, nothing appears from that history which clearly indicates an intention to limit the application of the Act to Government actions only. Therefore, the Act should be administered as written, and the language 'civil proceedings' given its usual and accepted meaning. (Citing cases.) Accordingly, this contention of the defendant is rejected, and plaintiff may recover for any damages incurred from the date it began purchasing cans from defendant, June 1, 1943."

█ Based upon its own consideration of the Act itself, its legislative history and the briefs and arguments of counsel, this Court has reached the conclusion in the instant case that the effect of the Federal Tolling Act was to suspend the running of any existing statute of limitations applicable to violations of Federal Anti-Trust laws whether the action is brought by the United States or by private litigants. This conclusion is supported by rulings of the other District Courts in the cases just above referred to.

█ (2) The Court is of the opinion, and so finds, that the facts alleged in the complaint (and which for the purposes of this hearing are admitted) establish a single wrong and a single cause of action, and that the damages, if any, resulting from the accumulative effect of the alleged acts of the defendants did not accrue until the common purpose of the alleged conspiracy had been achieved.

The Court has arrived at this conclusion upon the authority of Original Ballet Russe v. Ballet Theatre, 133 F.2d 187, decided by the Court of Appeals of this (2nd) Circuit.

It would serve no useful purpose to quote too much at length from the decision in the Original Ballet Russe case. Counsel are familiar with it. However, it would seem pertinent to here call attention briefly to the following, which, together with the whole of the decision, the Court deems applicable and decisive here: At page 189 of 133 F.2d the Court says:

"We agree that where conduct is tortious in itself allegations that it was committed pursuant to a conspiracy add nothing to the complaint, although conduct otherwise innocent may sometimes become actionable if done in concert. (Citing authorities.) But we cannot agree that the claim for relief set out in plaintiff's original and amended complaints was one 'for conspiracy.' The cause of action alleged is the intentional destruction of plaintiff's business without justifiable excuse. All the acts of defendants are alleged to have been directed to this end. * * *

"The fact that in pleading his claim the plaintiff has charged the defendants with accomplishing the harm by acts which viewed independently might themselves be deemed torts does not necessarily mean that he has alleged several causes of action which must be stated in separate counts."

(3) From the foregoing, it follows that plaintiff's cause of action did not accrue until June, 1942. The applicable state limitations began to run from that date and not upon the dates when each of the alleged overt acts was committed.