GENERAL AIRCRAFT CORPORATION

v.

AIR AMERICA, INC., et al.

Civ. A. No. 77–1926.

United States District Court,
District of Columbia.

Jan. 30, 1979.

4

Michael R. Lemov, Leighton, Conklin & Lemov, Washington, D. C., Theodore E. Dinsmoor, Gaston Snow & Ely Bartlett, Boston, Mass., for plaintiff General Aircraft Corp.

Phillip D. Bostwick, Shaw, Pittman, Potts & Trowbridge, Washington, D. C., for defendants Air America, Inc., Air Asia Co., Ltd. and George A. Doole, Jr.

Glenn V. Whitaker, U. S. Dept. of Justice, Washington, D. C., for defendant Lawrence R. Houston.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

Plaintiff General Aircraft Corporation (GAC), formerly a designer and manufacturer of aircraft having short take-off and landing (STOL) characteristics sold under the trade names "Helio Courier" and "Helio Stallion," filed a seventy-one page complaint on November 8, 1977 seeking treble damages under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.[1]

Named as defendants are Air America, Inc. (Air America), Air Asia Company, Ltd. (Air Asia), its wholly-owned subsidiary, and George A. Doole, Jr. (Doole), the Chief Executive Officer of Air America and Air Asia during the 1950's and 1960's until his retirement in 1971. These defendants are alleged to be part of the "CIA Air Proprietary Complex" (complaint, pp. 12, 14, 21).[2]

Other named defendants include Bird & Sons, Inc. (Bird), Continental Air Services, Inc. (Continental),[3] private domestic corporations which allegedly flew missions for the CIA using STOL aircraft, and Fairchild Industries, Inc. (Fairchild), a domestic corporation which designed, developed and produced certain commercial and military STOOL aircraft, some of which was accomplished under license from a Swiss company.[4] GAC and Fairchild were direct competitors in the light STOL aircraft market.

Finally, Lawrence R. Houston, General Counsel of the Central Intelligence Agency from 1947 to July 1, 1973, and various unknown CIA agents are also alleged to have engaged in one or more of the conspiratorial acts described in the complaint.

GAC alleges that all of the named defendants conspired to and did engage in activities designed to restrain trade in domestic and foreign STOL markets in violation of Section 1 of the Sherman Act. GAC also claims that defendants monopolized the STOL aircraft product and service market thereby violating Section 2 of the Sherman Act. Specifically, GAC alleges that the CIA air proprietary complex employees falsely disparaged GAC's STOL aircraft products and services by circulating false and misleading performance reports and its personnel by posing as GAC employees in foreign countries while conducting illegal and immoral covert operations. The complaint also alleges that the CIA air proprietary complex engaged in a "vendetta" designed to drive GAC out of business in response to GAC's refusal to conduct Southeast Asian Helio sales under the auspices of Doole and Air America. In furtherance of this vendetta, Air Asia is alleged to have obtained GAC proprietary data and trade secrets in order to fabricate Helio planes and parts without license at its repair facility in Taiwan from 1962 to January 31, 1975. Finally GAC alleges that the CIA proprietary complex used its extensive power to orchestrate a boycott of GAC's STOL aircraft, parts and services by all of the defendants and to promote the sale of Fairchild's STOL aircraft thereby completing the conspiratorial design to destroy GAC's competitive position in the marketplace.

GAC is seeking to recover treble damages for lost sales to certain foreign governments and to the United States as well as to various unspecified private domestic and

---

1. GAC has also filed suit in the Federal District Court for the Eastern District of Virginia under the Federal Tort Claims Act (FTCA) and in the United States Court of Claims, each of these actions presenting the same claims but advancing differing theories of recovery.

2. Although the United States has been sued in the other cases because of its role in the alleged conspiracy, note 1, *supra*, it has not been named as a defendant in this case.

3. Bird was dismissed with prejudice by stipulation on July 31, 1978. In August of 1965, Continental acquired all of Bird's assets.

4. Fairchild, at best a peripheral part of the alleged conspiracies, was dismissed from this action by the Court on July 7, 1978.

foreign corporations, including Bird and Continental. The matter is presently before the Court on various motions to dismiss or in the alternative for summary judgment and motions for a more definite statement as to some of GAC's claims.

### Claims for Lost Sales to Foreign Governments

Plaintiff has petitioned the Court to review conspiratorial actions allegedly taken by the CIA and certain domestic and foreign corporations and to assess their impact on procurement decisions reached by foreign governments. The theory of the complaint is not that the alleged combination or conspiracy[5] itself damaged plaintiff but that the adverse purchasing determinations made by foreign governments were influenced by certain actions taken in furtherance of the alleged conspiracy and that this resulted in the elimination of a market for GAC's STOL aircraft and other services. Defendants Continental, Air America, Air Asia and Doole have moved to dismiss these claims arguing that the Act of State Doctrine renders GAC's claims nonjusticiable.

The Court concludes that it has jurisdiction over plaintiff's claims despite their focus on foreign commerce and some actions which took place in foreign countries. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). However, the compelling principles embodied in antitrust legislation are at times outweighed by the abstention principle adhered to by the courts in applying the Act of State Doctrine, thus rendering nonjusticiable any claim by GAC requiring this Court to probe and analyze procurement decisions made by foreign governments.

[1, 2] The so-called Act of State Doctrine is of federal common law origin enunciated by the United States Supreme Court as follows: "in its traditional formulation [the Act of State Doctrine] precludes the courts of this country from inquiring into

the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Banco National de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964).[6] The Act of State Doctrine focuses on both the competency and desirability of judicial inquiry into either the validity or motivation of actions taken by foreign states on their own soil. *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976); *Banco National de Cuba v. Sabbatino, supra; Hunt v. Mobil Oil Corp.*, 550 F.2d 68 (2d Cir. 1977), *cert. denied*, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977). Typically, the Act of State Doctrine is invoked where the validity of actions of a foreign nation is being challenged. Less frequently, the doctrine is applied to claims of improper influence of actions taken by foreign governments. However, it has been held by the United States Supreme Court that an antitrust plaintiff cannot recover if the claim is partially based upon the sovereign act of a foreign government even where the act is induced by a non-governmental defendant. *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 358, 29 S.Ct. 511, 53 L.Ed. 826 (1909); W. Fugate, *Foreign Commerce and the Antitrust Laws* 75 (2d ed. 1973). Thus, where the injury complained of results directly from the acts or decisions of a foreign sovereign and only indirectly from defendants' allegedly unlawful anticompetitive activities, the Court must dismiss the claims as nonjusticiable. *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F.Supp. 92 (C.D.Cal.1971), *aff'd*, 461 F.2d 1261 (9th Cir. 1972), *cert. denied*, 409 U.S. 950, 93 S.Ct. 272, 34 L.Ed.2d 221 (1972).

GAC's reliance on *United States v. Sisal Sales Corp.*, 274 U.S. 268, 47 S.Ct. 592, 71 L.Ed. 1042 (1927) and *Continental Ore Co. v. Union Carbide & Carbon Co.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962), both decided after *American Banana, supra,*

---

5. No foreign government has been named as a defendant or a conspirator.

6. The Court notes the overriding legislation, *see* 22 U.S.C. § 2370(e), limiting the invocation of the Act of State Doctrine, but concludes that the legislation is inapplicable to the case at bar.

is misplaced. In neither case did the plaintiff's claims require analysis of the reasons underlying sovereign acts. In both cases, the direct cause of the injuries alleged was the actions of private corporations and not the act of the sovereign.

 In the case at bar, plaintiff must demonstrate that its business was injured as a result of anticompetitive conduct on the part of defendants. *Radiant Burners Inc. v. Peoples Gas Light & Coke Co.*, 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); *Hunt v. Mobil Oil Corp.*, 550 F.2d 68 (2d Cir. 1977). The motivation underlying purchasing decisions made by foreign governments is an essential issue raised by the pleadings. The serious concerns recognized in prior decisions invoking the Act of State Doctrine are clearly present in this case. Brief for defendant Fairchild Industries, Inc. at 30–32. Accordingly this Court is precluded from reaching the merits of plaintiff's allegations and the claims for lost sales to foreign governments is dismissed against all of the defendants.

### Claims for Lost Sales to United States Government Agencies

 Plaintiff also alleges that the defendant's anticompetitive activities influenced procurement decisions made by United States government agencies in at least three instances: (1) a 1965 test competition conducted by the Air Force Tactical Air Command (complaint, p. 57); (2) a 1967 sole-source procurement of STOL aircraft by the Navy known as the "Riverine" program (complaint, pp. 58–59); and (3) a 1971 Air Force procurement of STOL aircraft for use in Cambodia and Thailand (complaint, p. 61). Plaintiff also alleges that the defendants influenced STOL aircraft procurement decisions made by the CIA. Defendants Air America, Air Asia, Doole and Continental have moved to dismiss these claims on the basis of the *Noerr-Pennington* doctrine.

In *Eastern Railroad President's Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) the United States Supreme Court held that the antitrust laws did not prohibit mere group solicitation designed to influence the Legislative Branch in passage of laws or the Executive Branch in their enforcement, regardless of intent or purpose. In concluding that the First Amendment protected such activity, the Court focused on the essential nature of the right to petition government action in a representative democracy.

The scope of the antitrust immunity announced in *Noerr* was extended in *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) to afford protection to joint efforts to influence public officials even though such conduct is part of a larger scheme which violates the antitrust laws.

Finally, in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) the *Noerr-Pennington* doctrine was applied to efforts to influence administrative agencies and the courts.

Courts have been reluctant to apply the *Noerr-Pennington* doctrine to attempts to influence government bodies acting in purely commercial matters such as procurement. Under such circumstances, the government entity is not acting as a political body but as a participant in the marketplace. For example, government decisions concerning specifications for swimming pools, the leasing of a football stadium and the award of a soft drink concession have been held to be outside the scope of the doctrine. *George R. Whitten Jr. v. Paddock Pool Builders, Inc.*, 424 F.2d 25, 31–34 (1st Cir. 1970), *cert. denied*, 400 U.S. 850, 91 S.Ct. 54, 27 L.Ed.2d 88 (1970), *on remand*, 376 F.Supp. 125 (D.Mass.1974), *aff'd*, 508 F.2d 547 (1st Cir. 1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975); *Hecht v. Pro Football, Inc.*, 144 U.S.App.D.C. 56, 444 F.2d 931–942 (D.C. Cir. 1971; *Sacramento Coca-Cola Bot. Co. v. Chauffeurs Loc. 150*, 440 F.2d 1096, 1099 (9th Cir. 1971), *cert. denied*, 404 U.S. 826, 92 S.Ct. 57, 30 L.Ed.2d 54 (1971).

GAC has alleged that the defendants falsely disparaged GAC's STOL aircraft products and services to the United States Armed Services, the CIA and United States government officials thereby causing GAC to lose sales to those government agencies. Even if the *Noerr-Pennington* doctrine applied, these allegations fall squarely within an exception noted in *Noerr* and later explained in *Trucking Unlimited*: "[t]here are many other forms of illegal and reprehensible practice which may corrupt the administrative or judicial processes and which may result in antitrust violations. Misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process." *Trucking Unlimited*, 404 U.S. at 513, 92 S.Ct. at 613; *Metro Cable Co. v. CATV of Rockford, Inc.*, 516 F.2d 220 (7th Cir. 1975). .

In reaching a decision not to purchase plaintiff's products and services, none of the government entities acted in either a legislative, adjudicatory or administrative capacity so as to place defendants' actions within the reach of the *Noerr-Pennington* exception. Even if this were not true, the allegedly misleading performance reports and false disparagement engaged in by the defendants would be of no assistance to a decisionmaker acting in the marketplace and such conduct would not be immune from antitrust liability. The Court concludes that GAC's claims for lost sales to government agencies are not barred by the *Noerr-Pennington* doctrine.

### The Statute of Limitations

That the *Noerr-Pennington* doctrine is inapplicable to plaintiff's claims does not end the matter. Defendants have also moved to dismiss the complaint on the ground that the claims are barred by the four year statute of limitations. 15 U.S.C. § 15b. In opposition, plaintiff asserts that (1) its claims were fraudulently concealed by Houston and various co-conspirators until 1975; (2) defendants are estopped to assert a statute of limitations defense; (3) under the so-called *Zenith* exception concerning speculative damages its claims did

not accrue prior to 1976 when its defunct business was finally sold; and (4) none of its claims are barred because defendants engaged in a continuing course of conduct, including monopolization, which did not cease prior to November 8, 1973. Thus, the Court must determine whether GAC's claims for lost sales to the United States and to various unspecified private corporations are timely.

■ In the case at bar, GAC may proceed with any claims accruing during the four year period of limitations immediately preceding commencement of this action on November 8, 1977. 15 U.S.C. § 15b. In order to recover for injurious acts occurring prior to November 8, 1973, GAC must plead with particularity and prove that (1) the statute of limitations was tolled so as to extend the limitations period beyond that time, or (2) claims arising from the wrongful actions did not accrue prior to November 8, 1973 because future damages were not provable until at least that time or did not accrue for some other reason. Mere allegation of the word "fraudulent" is not sufficient to avoid the statute of limitations. Three elements must be pleaded and proved in order to establish fraudulent concealment: (1) wrongful concealment by the party raising the statute of limitations defense (2) plaintiff's failure to discover the operative facts forming the basis of his cause of action during the limitations period (3) despite the exercise of due diligence. *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 574 (4th Cir. 1976); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975).

Careful examination of GAC's complaint fails to reveal any clear allegations of active concealment by defendants of their wrongful actions; absent a duty to speak, mere silence, nondisclosure or denial is not sufficient to toll the statute. *Wood v. Carpenter*, 101 U.S. 135, 143, 25 L.Ed. 807 (1879); *Lukenas v. Bryce's Mountain Resort*, 538 F.2d 594 (4th Cir. 1976); *Public Service Co. of N.M. v. General Elec. Co.*, 315 F.2d 306 (10th Cir. 1963) *cert. denied*, 374 U.S. 809, 83 S.Ct. 1695, 10 L.Ed.2d 1033 (1963).

■ In addition, GAC has failed to sufficiently set forth its diligence and "conscientious effort" to ascertain the cause of its marketing failure. GAC has also neglected to disclose which newly-discovered facts gleaned from Congressional investigation of CIA activity enabled it to file its complaint in 1977 rather than in 1967. *See* Defendant Houston's Motion to Dismiss, Affidavit of John K. Greaney, Exhibits A and B. To the extent plaintiff seeks to avoid the limitations defense by arguing that it was in a better position to prosecute its suit in 1977, it must fail for it is the invasion and not the *extent* of the invasion or injury which must be concealed.

■ The Court concludes the plaintiff has failed to set forth a concealment of facts which prevented it from filing a timely action. *Hall v. E. I. DuPont DeNemours & Co.*, 312 F.Supp. 358 (E.D.N.Y.1970).

■ Plaintiff's other arguments blaming their inaction on improper legal advice from its own counsel or on Houston's earlier denial of wrongdoing are without merit to defeat defendants' motions.

*The Zenith Exception*

■ The leading case concerning accrual of an antitrust claim is *Zenith Radio Corporation v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) in which the Court declared that "[g]enerally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Id.* at 338, 91 S.Ct. at 806. The Court went on to say, however, that

if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date. To recover those damages, he must sue within the requisite number of years from the accrual of the action. On the other hand, it is hornbook law, in antitrust actions as in others, that even if injury and a cause of action have accrued as of a certain

date, future damages that might arise from the conduct sued on are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable. (citations omitted)

*Id.* at 339, 91 S.Ct. at 806.

Because most of the alleged injurious acts took place prior to November 8, 1973, GAC is attempting to place its claims within the narrow confines of the *Zenith* exception by seeking recovery for the complete destruction of its business. In essence, plaintiff argues that when one element of damage, in this case the value of its business as destroyed, is not provable, then all damages flowing from conspiratorial acts are unascertainable until the business is actually sold. *But cf. Poster Exchange Inc. v. National Screen Service Corp.*, 517 F.2d 117, 129 (5th Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976) (further injury resulting from a prior overt act does not give rise to a new cause of action). The Court cannot adhere to the position adopted by GAC.

At least two courts have held persuasively that a plaintiff cannot await the availability of the best evidence if damage is otherwise provable. *Hanson v. Shell Oil Co.*, 541 F.2d 1352 (9th Cir. 1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977); *Monona Shores, Inc. v. United States Steel Corp.*, 374 F.Supp. 930, 936 (D.Minn.1973). Moreover, plaintiff's business situation on November 8, 1973 was strikingly similar to its position in 1976 when it sold its aircraft business. The record indicates that by November of 1973 GAC knew of the serious nature of the damage to its business, had withdrawn from STOL aircraft production and was considering offers for the sale of its assets. Affidavit of John Greaney, Exhibit B; Memorandum for Defendant Fairchild Industries, Inc. at 14–16 and Statement of Facts by Fairchild, ¶¶ 7–21; complaint, pp. 30 & 56; Second Affidavit of Robert B. Kimnach.

It is clear to the Court that some of plaintiff's claims are absolutely barred.

For example, the unsuccessful sales efforts in 1967 and 1971, detailed in the complaint at pp. 58–61 & 67, resulted in provable damages once contracts were awarded to GAC's competitors. Although the record affords the Court an apparent basis to rule that GAC knew of the extent and seriousness of its injuries, including the total destruction of its business prior to November 1973, there exist allegations from which the existence of claims within the *Zenith* exception might possibly be inferred. The Court concludes, however, that justice requires that plaintiff be given the opportunity to specify with particularity why and how its "*Zenith* exception" claims became provable only after November 8, 1973. As this information is not within the exclusive control of the defendants, GAC does not require discovery in order to plead its claims.

GAC also argues that its complaint stems from continuing antitrust behavior and not merely the continuing impact of a prior injurious act. *But see, e. g.*, complaint, p. 49. Plaintiff relies heavily on the decision of the United States Supreme Court in *Hanover Shoe, Inc. v. United Shoe Manufacturing Corp.*, 392 U.S. 481, 502 n. 15, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), and several other cases, arguing that defendants engaged in a continuing conspiracy which inflicted continuing and accumulating damage. From this premise GAC would have the Court rule that it had only one cause of action which did not accrue until the common purpose and object of the alleged conspiracy, the destruction of plaintiff's business, had been achieved.

Review of the decisions relied on by plaintiff reveals crucial distinguishing features rendering them inapplicable to the case at bar. For example, in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 377 F.2d 776 (3d Cir. 1967), a non-conspiracy monopolization case, the Court expressly found that defendant's collection for machinery rentals during the stipulated limita-

tions period was an overt act giving rise to cause of action.[7] On review, the United States Supreme Court in *Hanover Shoe v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), affirmed the conclusion of the Court of Appeals regarding the computation of damages in all respects save one not relevant here. Thus, the Supreme Court's decision in *Hanover Shoe* is entirely consistent with the *Zenith* holding that an antitrust claim is barred unless the plaintiff can plead and prove that a claim accrued within the limitations period.

The facts and the premise of the decision in *Winkler-Koch Engineering Co. v. Universal Oil Products Co.*, 96 F.Supp. 1014 (1950) *aff'd on rehearing*, 100 F.Supp. 15 (S.D.N.Y. 1951), namely, that the overt acts alleged were not complete, individualized tortious acts or *per se* antitrust violations to which injury and damage could be attributed, are simply inapplicable to the case at bar. While the Court concludes that the result reached in *Winkler-Koch* under some circumstances survives analysis after *Hanover Shoe* and *Zenith*, it is clear that the complaint alleges wrongs most, if not all of which appear to have been actionable long before the limitations period. Addition of a claim for complete destruction of one's business, the logical result of successful anticompetitive conduct, does not serve to bring this action within the extraordinarily narrow confines of the *Winkler-Koch* analysis. *Cf. Delta Theatres, Inc. v. Paramount Pictures*, 158 F.Supp. 644 (E.D.La.1958) (Wright, J.).

Plaintiff has charged the defendants with various predatory practices including a boycott, interference with customer relations, disparagement of GAC's products and other unspecified unfair sales methods. Each of these allegations is actionable but GAC has failed to specify when these illicit actions occurred. Discovery can

---

7. In *Hanover Shoe*, one aspect of the monopolization scheme involved defendant's refusal to sell necessary machinery to plaintiff. The state statute of limitations applied in this 1955 action and the parties conceded that plaintiff could collect damages incurred after 1939 because of various tolling provisions. Despite the onset of antitrust behavior in 1912, plaintiff could not recover for damages incurred between 1912–1939.

only serve to round off the GAC's knowledge of these events. For example, when did any of the defendants refuse to purchase GAC's products? Because of the peculiar nature of the STOL market and the apparent absence of any ongoing business relationship between the parties, GAC must plead and prove a refusal to do business by the defendants during the limitations period. Mere silence or a continued refusal to deal (absent renewed overtures) are not overt acts sufficient to provide the basis for a new cause of action. *Charlotte Telecasters, Inc. v. Jefferson Pilot Corp.*, 546 F.2d 570, 573 (4th Cir. 1976). Alternatively, plaintiff might prove the accrual of a cause of action during the limitations period. It is clear, however, that GAC's pleading is presently not sufficient to withstand a motion to dismiss. The same is true for the remaining allegations concerning customer relations, disparagement and unfair sales methods.

Claims arising out of the appropriation of trade secrets and fabrication of Helio aircraft and parts are different, however, and GAC may require discovery on these allegations in order to fix the time at which its rights were invaded.

The Court cannot and does not draw any firm conclusions concerning the timeliness of the various claims made by GAC but does find that justice requires that plaintiff be given leave to amend its complaint in a manner consistent with this opinion and with Fed.R.Civ.P. 8(a).

*Venue*

Defendant Air Asia's motion to dismiss for improper venue under 15 U.S.C. § 22 is denied. It is undisputed that Air Asia is an alien corporation and as such, venue is proper in this judicial district under 28 U.S.C. § 1391(d) and by analogy to the holding of the United States Supreme Court in *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972).

*Defendant Houston*

Finally, the Court reaffirms its prior dismissal of Houston from this action.