**PIONEER CO., INC., Appellant,**

v.

**TALON, INC. and Donahue Sales Corporation, Appellees.**

**No. 71–1620.**

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1972.

Decided June 29, 1972.

Rehearing and Rehearing En Banc Denied Aug. 15, 1972.

Sydney C. Berde, Berde, Leonard & Weinblatt, St. Paul, Minn., for appellant.

Harold F. Baker, J. Coleman Bean, Howrey, Simon, Baker & Murchison, Washington, D. C., for appellees; Robert M. Bowen, Levitt, Palmer, Bowen, Bearmon & Rotman, Minneapolis, Minn., of counsel.

Before Mr. Justice CLARK,* and MATTHES and LAY, Circuit Judges.

CLARK, Associate Justice.

This case comes here from the dismissal of the amended complaint of the appellant, Pioneer Co., Inc., which was filed against Talon, Inc. and Donahue Sales Corporation, appellees, alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, upon the ground that the action was barred by the four-year statute of limitation, 15 U.S.C. § 15b. The statute says that the action is barred "unless commenced within four years after the cause of action accrued." The trial court, after an evidentiary hearing on the issue, held that the cause of action accrued on July 24, 1964, and the suit having been filed on August 28, 1968, found it barred. We find that the statute began to run on September 4, 1964, the date that two orders Pioneer had placed with Talon were refused and from which it suffered injury.

█ 1. The facts adduced at the hearing on the motion to dismiss reveal a flagrant violation of the antitrust laws by Talon and Donahue.[1] Their brief in this court recites that Pioneer began jobbing Talon zippers as a wholesaler in 1959 and during the next five years made some $7000 of sales of Talon zippers.

James Ciliberti, a Donahue salesman in Minneapolis, received a telephone call on July 14, 1964, from Walter Salmon, Donahue's marketing director in New York, requesting him to investigate an advertisement in the Minneapolis paper on July 1, 1964, by Shoppers City Stores offering Talon zippers at discount prices.[2] After verifying that Pioneer sold Talon zippers to Shoppers City Stores at a discount, Mr. Ciliberti requested Mr. Rose, President of Pioneer to repurchase the zippers from Shoppers City Stores. When Rose was not able to do so, Mr. Ciliberti purchased all of the Talon zippers on the display counters at Shoppers City Stores. Mr. Ciliberti again talked to Mr. Salmon who told Mr. Ciliberti that Donahue was terminating all shipment of Talon zippers to Pioneer. On July 24th Mr. Ciliberti completed purchasing the remaining Talon zippers in other Shoppers City Stores and advised Mr. Rose that Donahue would no longer sell Talon zippers to Pioneer, that Pioneer was to return all Talon inventory and that all business relations were terminated.

Rose testified that he was a discount wholesaler and had Talon stock in his warehouse for sale to retailers; that he had received no formal commitment from anyone that orders would not be accepted; and that he continued to send in orders to Donahue for Talon zippers. The "first notification" that he received was on September 4th. It was sent to his order clerk and was signed by Mr. Salmon. It advised that the two orders he had "recently placed" would not be filled because "a decision had been made to discontinue sales to jobbers whose re-

---

* Associate Justice Tom C. Clark, United States Supreme Court, retired is sitting by designation.

1. Talon, Inc., is a manufacturer of zippers, and Donahue Sales Corporation is its national sales agent.

2. The New York buyer for J. C. Penney Company or "a member of management" had called Salmon, advising that a communication from Penney's store in Twin Cities had reported that Shoppers City was selling Talon zippers considerably below preprinted retail price.

quirements have been modest, due to inconvenience and additional cost of dealing with such jobbers." There was no mention of any previous termination of business relations, return of inventory, etc.

2. It appears to us that Pioneer was acting as a wholesale jobber to retailers engaged in the sale of sundries to drug, variety, food, department and discount stores in Minnesota, Wisconsin, Iowa, North and South Dakota. Pioneer was not a formal full-time dealer or distributor but merely placed orders with manufacturers and distributors on individual order forms as a wholesaler and without any formal contract with either Talon or Donahue. It had been placing written orders with Donahue for Talon zippers on a very moderate basis of about $1500 a year. He had previously discounted Talon zippers below the manufacturers' suggested price. The two orders that he placed and which were refused on September 4, 1964, were a separate cause of action and in the light of the continuing conspiracy[3] were not barred by the statute since the suit was filed in August, 1968. As the Supreme Court said in Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed. 2d 77 (1971), "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business . . . In the context of a continuing conspiracy . . . this has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." At 338, 91 S.Ct. at 806.

And as the court has likewise said in Highland Supply Corp. v. Reynolds Metal Co., 327 F.2d 725, 732 (8 Cir. 1964): "It is well settled that where a private cause of action under the antitrust laws is based on a continued invasion of one's rights, his cause of action accrues from day to day as his rights are invaded to his damage." The Ninth Circuit has held likewise. See Hoopes v. Union Oil Co., 374 F.2d 480, 486 (9 Cir. 1967). See also Steiner v. Twentieth Century Fox Film Corp., 232 F.2d 190, 194 (9 Cir. 1956). Also see Muskin Shoe Co. v. United Shoe Machinery Corp., 167 F. Supp. 106 (D.C.Md.1958). See also Laitram Corporation v. Deepsouth Packing Company, 279 F.Supp. 883, 889–890 (E. D.La.1968).

Talon and Donahue depend upon Emich Motor Corp. v. General Motors Corporation, 229 F.2d 714 (7 Cir. 1956) and similar cases. These cases are wholly consistent with our result. Emich was a formal dealer and contractual agent for General Motors. It cancelled the Emich dealership and limitation began to run on that act as of the date of cancellation. Emich sued to recover damages occurring subsequent thereto as well as flowing therefrom. Pioneer, on the contrary, suffered a continuing conspiracy to prevent it from wholesaling Talon zippers at discount prices; it subsequently placed orders which were refused because of the continuing conspiracy. It had no contract, as did Emich, and there was nothing to cancel— only orders to refuse which Talon and Donahue did refuse on September 4th. It is, therefore, clear that even though Donahue gave notice, it terminated nothing of legal significance. See 2361 State Corporation v. Sealy Inc., 263 F. Supp. 845, 851 (N.D.Ill.1967). Subsequent orders placed in due course were rejected because of the continuing conspiracy and specific damage resulted.

This is not a case where a single act causes damages that are suffered over a long period of time. Here, to maintain their manufacturers' price, Talon and Donahue were obliged to continue their violation of the antitrust laws by refus-

---

3. Defendants entered into a consent order with the Federal Trade Commission in 1970, agreeing to "forthwith cease and desist from" the acts and practices alleged in this case. F.T.C. Docket No. C–1713 (March 25, 1970). The conspiracy against Pioneer apparently continued until that date.

ing to sell to Pioneer on its request. Since the record shows continued refusals until at least September 4, 1964, the action is not barred.

Nor is Crummer Co. v. Du Pont, 223 F.2d 238 (5 Cir. 1955) inconsistent. There Crummer brought an action in 1949 alleging that a conspiracy to drive him from business was commenced in 1941 and continued until 1948. Crummer contended that one cause of action accrued when the last overt act occurred and covered all of the acts alleged. The Fifth Circuit did not agree. Here Talon and Donahue say that the cause of action for all acts and injuries accrues when the first act is committed, a position that the Fifth Circuit specifically repudiated. Id. at 247, 248.

Likewise Talon and Donahue's reliance on Laundry Equipment Sales Corp. v. Borg-Warner Corp., 334 F.2d 788 (7 Cir. 1964) is also misplaced. There plaintiff failed to claim that any overt act within the statutory period caused plaintiff any damage and thus the action was barred. In the instant case, however, it is quite clear that appellees' continued refusals to deal caused new injury to Pioneer each time an order was refused.[4]

Finally, Garelick v. Goerlich's Inc., 323 F.2d 854 (6 Cir. 1963) actually supports Pioneer. There the court denied recovery simply because the injuries flowing from the subsequent acts caused no damage to Garelick. He had asked by telephone to be re-instated as distributor; Goerlich's Inc.'s representative answered that the appropriate official would return the call; but he never did so. Later a Goerlich's travelling representative called at Garelick's office soliciting orders. Someone in the office stated that he was certainly surprised at the call since Goerlich had refused to sell Garelick previously. The representative then said he would take it up with his principal but nothing further was heard. At p. 856. Garelick did nothing further about either of these incidents. On the other hand Pioneer, after Ciliberti's call concerning Shoppers continued to send in orders to Talon and Donahue. The teaching of the case is clear—the subsequent acts must result in damage.

It follows from what we have said that Pioneer is entitled to bring this action for all damages suffered as a result of Talon and Donahue's refusal to deal after August 28, 1964. The record before us having been made solely on the limitation issue is not sufficient for damage purposes. In addition to the damages flowing from the denial of orders on account of the conspiracy Pioneer would also be entitled to such other damage that it suffered by reason of the loss of accounts, such as Shoppers, that flow from the conspiracy; as well as the refusal of other manufacturers and distributors who may have refused to deal with Pioneer because of the action of Talon and Donahue. Where the impact of the conspiracy is not clearly ascertainable as to time or exactness the trial court may find it fair to apply the principles announced in Delta Theaters v. Paramount Pictures, 158 F.Supp. 644 (E.D.La.1958), and Schenley Industries, Inc. v. N. J. Wine & Spirit Wholesalers Association, 272 F.Supp. 872 (D.N.J. 1967), and permit recovery of all damages suffered within the statutory period.

Reversed and remanded.

---

4. That Pioneer was on an order to order basis was made clear during the cross-examination of Mr. Rose, the owner of Pioneer;
   "Q. But you had no formal agreement here? A. No. No formal agreement. Q. Where you have no formal agreement you have no formal termination? A. It would follow that, yes."