CHARLOTTE TELECASTERS, INC., and North Carolina Cable, Inc., Appellants,

Television Presentations, Inc., Plaintiff,

v.

JEFFERSON–PILOT CORPORATION et al., Appellees.

No. 75–2326.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1976.

Decided Dec. 10, 1976.

Jerry S. Cohen, Washington, D. C. (Michael D. Hausfeld, Herbert E. Milstein, Washington, D. C., Jerry W. Whitley, Charlotte, N. C., on brief), for appellants.

William L. Stocks, Greensboro, N. C. (Welch Jordan, Janet L. Covey, Jordan, Wright, Nichols, Caffrey & Hill, Greensboro, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Circuit Judge, and BUTZNER and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

Charlotte Telecasters, Inc., and Television Presentations, Inc., (Telecasters) appeal the

summary judgment dismissing their antitrust claim against Jefferson-Pilot Corp., Jefferson Standard Broadcast Co., and Jefferson-Carolina Corp. (Jefferson). Telecasters charged that Jefferson conspired with members of the city council of Charlotte, North Carolina, to obtain a television franchise, and to prevent the award of a franchise to the applicant in which Telecasters had an interest.[1] The district court ruled that Telecasters' claim was barred by the statute of limitations, and, alternatively, that Jefferson did not violate Section 1 of the Sherman Act, 15 U.S.C. § 1.[2] Since we find that the claim was barred by the statute of limitations, we do not consider whether summary judgment was appropriate on the merits.

## I

On January 16, 1967, the city council enacted an ordinance authorizing non-exclusive franchises for cable television. The council awarded franchises to Jefferson and another applicant on March 20, 1967, and confirmed these awards on April 3, 1967. Although Telecasters did not receive a franchise, it was told, at the March meeting, that additional franchises might be considered in the future. On August 7, 1967, Telecasters asked the council to reconsider its application. The council, however took no further action.

■ Telecasters commenced this action on September 7, 1971. Section 4B of the Clayton Act, 15 U.S.C. § 15b, provides that an action to enforce the antitrust laws "shall be forever barred unless commenced within four years after the cause of action accrued." A cause of action generally accrues each time the defendant commits an act that injures the plaintiff's business. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Accordingly, this action would ordinarily be barred unless an act

injurious to Telecasters' business occurred after September 7, 1967.

Telecasters contends that the defendants were engaged in a continuing conspiracy to prevent it from obtaining a franchise. It argues that the cause of action did not accrue until the council had had a reasonable time—at least thirty days—to consider its request of August 7, 1967, and that the council's silence was an overt act of refusal. On the other hand, Jefferson claims that the alleged violation consisted of a single act which injured Telecasters. Under its theory, the cause of action accrued when the council confirmed the awards to Telecasters' competitors on April 3, 1967.

■ In deciding the date from which the cause of action accrued, we must determine whether the injury alleged by Telecasters was caused by a single or a continuing violation of the Act. Distinguishing between the two, the Supreme Court has held that a single violation necessarily occurs "within some specific and limited time span," whereas continuing violations "inflict continuing and accumulating harm." *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 502 n.15, 88 S.Ct. 2224, 2236, 20 L.Ed.2d 1231 (1968). For this reason, exclusion from participation in an industry constitutes a continuing conspiracy, unless the exclusion is final in its impact. *Poster Exchange, Inc. v. National Screen Service Corp.,* 517 F.2d 117, 126–27 (5th Cir. 1975); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.,* 512 F.2d 1264, 1270 (9th Cir. 1975). Thus, each refusal to deal gives rise to a claim under the antitrust laws. *Pioneer Co. v. Talon, Inc.,* 462 F.2d 1106, 1108–09 (8th Cir. 1972). Nevertheless, even when the plaintiff charges a continual refusal to deal, the statute of limitations commences to run from the last overt act causing injury to the plaintiff's business. *Poster Exchange,* 517 F.2d at 128.

---

1. The applicant was North Carolina Cable, Inc., which, though a party to the proceedings in the district court, has not appealed. Telecasters claims that it was interested in the application as a joint venturer, and, for simplicity, we will refer to Telecasters as the applicant.

2. The district court directed the entry of a final judgment as to this single claim of the multi-claim complaint pursuant to Fed.R.Civ.P. 54(b).

■ In this case, Telecasters was not excluded from participation in the cable television industry by a single act of the alleged conspirators at one specific time. Since the council adopted a non-exclusive ordinance and left open the possibility of granting additional franchises, Telecasters has properly alleged a continuing conspiracy. However, the last overt act of the alleged conspiracy was the council's consideration of Telecasters' request on August 7, 1967. On that occasion, the mayor responded that the council would "leave it as it is." His additional comment that the council "will give some thought to what [Telecasters' spokesman] has said today" did not promise action in the future. The council's silence after the meeting, therefore, does not constitute an overt act. *Cf. Poster Exchange,* 517 F.2d at 128. Since no overt act occurred within the four years preceding the filing of the complaint, the action is barred unless it falls within one of the exceptions to the statute of limitations.

## II

■■ Claiming that its loss of future profits could not be ascertained in 1967, Telecasters asserts that it is entitled to rely on the exception to the statute of limitations created by *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338–42, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). In *Zenith,* the Court held that a cause of action for future damages does not accrue until the damages become reasonably ascertainable and, therefore, capable of proof. However, *Zenith* did not prescribe new standards for determining whether damages are too speculative to permit recovery. The principal cases explaining the criteria for ascertaining whether damages are speculative remain *Bigelow v. RKO Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946) and *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562–66, 51 S.Ct. 248, 75 L.Ed. 544 (1931). These cases teach that when the defendant's wrong has been proven, "the jury may make a just and reasonable estimate of the damage based on relevant data, and render

its verdict accordingly. In such circumstances, 'juries are allowed to act upon probable and inferential, as well as direct and positive proof.'" 327 U.S. at 264, 66 S.Ct. at 580. Tested by these principles, we believe that Telecasters' damages could have been ascertained in September, 1967, with sufficient certainty to sustain a verdict.

Telecasters concedes that its future profits would depend on the number of subscribers to its cable television system. It argues that the subscriptions could not be estimated accurately until 1969 when Jefferson's success in signing subscribers could be evaluated.

■ We are not persuaded by Telecasters' argument. Telecasters' application to the council early in 1967 included its projection of subscribers and gross receipts for the first five years of operation under a franchise. These projections indicate that after the fourth year, its system would serve 29,000 to 30,000 subscribers, and the gross receipts would stabilize at approximately $1,740,000 to $1,800,000. These projections appear sufficient to enable a jury to make a just and reasonable award of damages. Telecasters introduced no proof that cast doubt on its projections or indicated that they were speculative. Since the projections were designed to induce the council to award a franchise, the district court could conclude, in the absence of evidence to the contrary, that they were rationally based on valid assumptions. Under these circumstances, we conclude that the damages which Telecasters sought were not too speculative to prevent the cause of action from accruing at the time of the last overt act, August 7, 1967. *Cf. Woods Exploration & Producing Co. v. Aluminum Co. of America,* 509 F.2d 784, 792 (5th Cir. 1975); *Akron Presform Mold Co. v. McNeil Corp.,* 496 F.2d 230, 234 (6th Cir. 1974).

## III

■ Telecasters also seeks application of the familiar rule that fraudulent concealment tolls a federal statute of limitations. *See Holmberg v. Armbrecht,* 327

U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). In *Weinberger v. Retail Credit Co.,* 498 F.2d 552, 555 (4th Cir. 1974), we emphasized, however, that merely intoning the word "fraudulently" is not sufficient to avoid the statute. We stated that the elements of this counterpoise are "(1) fraudulent concealment by the party raising the statute together with (2) the other party's failure to discover the facts which are the basis of his cause of action despite (3) the exercise of due diligence on his part." Since this means of avoiding the statute was created by courts of equity, we adopted their requirement that the facts necessary to show these elements should be distinctly pleaded. *Cf. Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 88 (2d Cir. 1961). In *Stearns v. Page,* 48 U.S. (7 How.) 818, 829, 12 L.Ed. 928 (1849), the Court explained the reasons for these essential allegations as follows:

> "A complainant, [to avoid the statute of limitations,] must state in his bill distinctly the particular act of fraud, misrepresentation, or concealment,—must specify how, when, and in what manner, it was perpetrated. The charges must be definite and reasonably certain, capable of proof, and clearly proved. . . . And especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been before made."

▮ Telecasters has made no averment of fraudulent concealment. We have no doubt that the district court would have excused its initial omission, and allowed it to respond to Jefferson's plea of the statute. But Telecasters sought no leave to amend. Obviously, Telecasters had ac-

quired information about its cause of action by September 7, 1971, when it filed its complaint, but it has not shown, by amendment to its pleadings, by affidavit, or otherwise, when and how it got this knowledge. It emphasizes that it learned additional facts after the suit was filed, but this information simply serves to corroborate the charge of conspiracy that had already been made, rather than to support Telecasters' claim that it was ignorant of the facts necessary to institute its suit.[3] Moreover, Telecasters has introduced no evidence from which the district court could infer that it exercised diligence to learn the facts before the statute barred its claim. At most, its claim is a plea of ignorance, but this is insufficient to avoid the statute. *Akron Presform Mold Co. v. McNeil Corp.,* 496 F.2d 230, 234 (6th Cir. 1974).

We affirm the judgment of the district court on the ground that the action is barred by the statute of limitations.

---

**3.** Indeed, for aught that appears in this record, Telecasters may have known on August 7, 1967, of the facts that led it to believe that Jefferson and members of the council had conspired to violate the antitrust laws. On that date, a spokesman for Telecasters told the city council that Telecasters could bring a legal action, but that it preferred to have the council

grant it a franchise "without going into a federal court." It has never explained what proceeding it contemplated, other than an action for violation of the antitrust laws, although it bears the burden of proof on the issue of fraudulent concealment. *Akron Presform Mold Co. v. McNeil Corp.,* 496 F.2d 230, 233 (6th Cir. 1974).