**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-2233

MAYOR AND CITY COUNCIL OF BALTIMORE; GOVERNMENT EMPLOYEES HEALTH ASSOCIATION, on behalf of itself and all others similarly situated,

Plaintiffs - Appellants,

v.

ACTELION PHARMACEUTICALS LTD.; ACTELION PHARMACEUTICALS US, INC.; JANSSEN RESEARCH & DEVELOPMENT, LLC,

Defendants - Appellees,

and

ACTELION CLINICAL RESEARCH, INC.,

Defendant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge.  (1:18-cv-03560-GLR)

Submitted:  January 29, 2021                    Decided:  April 13, 2021

Before NIEMEYER, WYNN and FLOYD, Circuit Judges.

Vacated and remanded by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Wynn and Judge Floyd joined.

Sharon K. Robertson, David O. Fisher, COHEN MILSTEIN SELLERS & TOLL, New York, New York, for Appellants. Gregory T. Lawrence, LAWRENCE LAW, LLC, Baltimore, Maryland; Katherine B. Forrest, Damaris Hernández, CRAVATH, SWAINE & MOORE LLP, New York, New York, for Appellees.

---

NIEMEYER, Circuit Judge:

The plaintiffs[1] commenced this antitrust class action against Actelion,[2] alleging that Actelion extended its patent monopoly for its branded drug Tracleer — a drug to treat pulmonary artery hypertension — beyond the patent's expiration date. They alleged that Actelion did so "through illegitimate means" with the intent of precluding competition from generic drug manufacturers and charging supracompetitive prices for Tracleer, in violation of federal and state antitrust laws. They claim that as a result of Actelion's illegal monopolization, they were injured by having to pay supracompetitive prices for Tracleer for some three years after Actelion's patent for Tracleer expired.

On Actelion's motion, the district court dismissed the plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6), ruling that all but four of the plaintiffs' claims were barred by the applicable four-year statutes of limitations because the action was commenced on November 19, 2018, more than four years after "Actelion's last overt anticompetitive act" in February 2014. The court identified that act as the consummation of settlement agreements between Actelion and several generic manufacturers, resulting in the dismissal of the manufacturers' antitrust actions against Actelion. With respect to the four claims that it held were not barred by limitations — claims made under the laws of Maine, Minnesota, Vermont, and Wisconsin — the court ruled that the plaintiffs lacked

---

[1] Mayor and City Council of Baltimore and Government Employees Health Association.

[2] Actelion Pharmaceuticals Ltd.; Actelion Clinical Research, Inc.; Actelion Pharmaceuticals US, Inc.; and Janssen Research & Development, LLC, collectively, "Actelion."

3

standing to assert them because the plaintiffs made no purchases of Tracleer in those States and thus suffered no harm that implicated their laws.

On appeal, we vacate and remand, concluding that the plaintiffs' antitrust claims did not accrue until the plaintiffs were injured by paying supracompetitive prices for Tracleer after the patent expired in November 2015. Therefore, their action commenced in November 2018 was timely. Moreover, even if the February 2014 date, when Actelion entered into agreements settling the generic manufacturers' antitrust claims, marked the last anticompetitive act, damages could not then have been recovered by plaintiffs because their claims would not have been ripe for judicial resolution in view of the speculative nature of future conduct that might have thereafter occurred. Therefore, limitations would not begin to run until the claims became ripe. And in any event, because the plaintiffs alleged that Actelion continued with anticompetitive acts after November 2015 in selling Tracleer at supracompetitive prices, new limitations periods began to run from each sale that caused the plaintiffs damages. Accordingly, we vacate the district court's limitations ruling.

As to the district court's standing ruling, we largely agree with the district court. But while the plaintiffs cannot for that reason seek relief under the laws of States in which they made no purchases of Tracleer — i.e., Maine, Minnesota, Vermont, and Wisconsin, as well as others — they nonetheless might, if a class is certified under Rule 23(c), be able to advance claims under those laws on behalf of class members who purchased Tracleer in those States. Accordingly, we conclude that the allegations asserting violations of the laws in States where plaintiffs did not purchase Tracleer may yet be considered when

4

determining whether the plaintiffs can, based on a Rule 23 analysis, represent class members who purchased Tracleer in those States, and if they can, then whether the plaintiffs can include those claims.

I

The facts alleged in the complaint are, for purposes of this appeal, taken as true, as the district court's dismissal order was based on Federal Rule of Civil Procedure 12(b)(6).

The complaint alleges that Actelion is a pharmaceutical company that obtained an exclusive license under a patent for Tracleer — U.S. Patent No. 5,292,740 (Patent '740) — which was issued in 1994 to Hoffman-LaRoche, Inc. Tracleer, which contains the compound bosentan, is the only oral treatment for pulmonary arterial hypertension, and Actelion made billions of dollars in profits from sales of the drug. Patent '740 expired on November 20, 2015.

For some three years after Patent '740 expired, no competitor brought a generic version of Tracleer to market, and Actelion was thus able to continue to charge the same supracompetitive prices for Tracleer that it had charged before the patent expired. In their complaint, the plaintiffs alleged that this absence of competition was attributable to a multi-year scheme by Actelion to block at least four generic manufacturers from filing applications for approval of a generic version of Tracleer with the intent to maintain its patent monopoly power beyond the expiration date, in violation of the antitrust laws. As alleged, the generic drug manufacturers sought to obtain from Actelion, beginning in 2009, samples of Tracleer to enable them to develop a generic drug. This was necessary because

a generic manufacturer is not permitted to simply manufacture its own sample, even if it knows how to; it must create a generic product that is proven to be bioequivalent to the branded product, which requires that it have samples of that branded product. The four generic manufacturers — Zydus Pharmaceuticals (USA) Inc., Apotex Inc., Actavis Inc., and Roxane Laboratories, Inc. — repeatedly, over the period from 2009 to 2012, requested to purchase samples from Actelion, and on each occasion Actelion refused, stating that it "ha[d] the right to choose with whom it d[id] business and to whom it [would] sell its products." At the same time, Actelion also, by contract, restricted its own distributors from selling samples of Tracleer to generic drug manufacturers.

When the generic drug manufacturers threatened to sue Actelion for violation of the antitrust laws, Actelion filed a preemptive action in September 2012 against Apotex and Roxane, seeking a declaratory judgment that it had the right to choose with whom it would do business and to whom it would sell its products, and that it had no duty to deal with Apotex or Roxane. Apotex and Roxane filed a counterclaim alleging that Actelion's conduct violated the antitrust laws, and Actavis and Zydus intervened to join in that claim. In denying Actelion's motion to dismiss the antitrust counterclaim, the district court indicated that it would be preparing a substantial written opinion to support its ruling. In so indicating, the court stated, "[W]hat I'm having difficulty [with] is . . . the notion that [Actelion's interpretation] somehow would allow a brand name manufacturer who has, I will call it, Section 2 [of the Sherman Act] intent to . . . confer upon them some kind of Section 2 immunity where . . . conduct beyond . . . a mere refusal to sell suggests an intent to extend or maintain a monopoly." Before the district court could issue its opinion,

6

however, Actelion entered into settlement agreements with the generic drug manufacturers in February 2014, the terms of which have not been disclosed. The plaintiffs alleged in their complaint that "[t]he settlements themselves [were] consequences of Actelion's anticompetitive actions."

Thereafter, Actelion continued — up to and beyond the expiration date of Patent '740 — to refuse to sell samples to different generic companies who requested them.

The complaint alleged, "But for Actelion's refusal to allow the generic[] [manufacturers] to purchase samples, one or more generics would have been available in November 2015" to provide competition and competitive prices. It contended further that Actelion's refusal to do business with the generic manufacturing companies was

> irrational but for its anticompetitive effects. . . . There is no legitimate, non-pretextual, procompetitive business justification for Actelion's refusal to sell samples of Tracleer to generic manufacturers. . . . Actelion's scheme was intended to impede generic competition to Tracleer, and it succeeded in doing so.

Thus, it alleged that Actelion possessed monopoly power and that,

> [t]hrough its overarching anticompetitive scheme . . . willfully maintained its monopoly power in the relevant market using restrictive or exclusionary conduct . . . . Actelion's anticompetitive conduct was done with the specific intent to maintain its monopoly in the market for bosentan in the United States.

The complaint summarized that Actelion's anticompetitive scheme was successful in "extend[ing] its dominance in [the relevant] market, maintain[ing] Tracleer's prices at supracompetitive levels," and "depriv[ing] the market of competition." According to the complaint, this illegal monopolization not only harmed competition but caused the

7

plaintiffs to pay supracompetitive prices for some three years after Actelion's patent expired. As alleged:

> Actelion's anticompetitive scheme has been 100% effective. Nearly three years after the expiration of the Tracleer patent, no generic Tracleer is available in the United States.

> Actelion's scheme has forced Plaintiffs and other purchasers to pay higher prices for bosentan for far longer than they otherwise would have. Without Actelion's years-long blockade, at least one generic version of Tracleer would have been available in the [United States] at or around the expiration of Tracleer's patent protection in November 2015. [Actelion's] unlawful conduct has barred generic versions of Tracleer from the market, prevented competition, and cost purchasers hundreds of millions of dollars in overcharge damages.

More particularly, the complaint alleged that the plaintiff City of Baltimore "purchased, paid, and/or provided reimbursement for some or all of the purchase price of Tracleer in Maryland" and "[a]bsent the unlawful conduct alleged herein, the City of Baltimore would have purchased less expensive generic alternatives rather than branded Tracleer." And it alleged the same for the plaintiff Government Employees Health Association, which was providing benefits to 1.5 million people residing in all 50 States as well as the District of Columbia and Puerto Rico.

The complaint concluded with allegations that Actelion violated § 2 of the Sherman Act, 15 U.S.C. § 2, as made privately enforceable through §§ 4 and 16 of the Clayton Act, *id*. §§ 15, 26. It also alleged violations of 25 state antitrust statutes and 20 state consumer protection statutes.

Actelion filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), raising several arguments for dismissal, including the two that are at

8

issue in this appeal. It contended that all but four of the plaintiffs' claims were time-barred by four-year statutes of limitations because the last overt act alleged by the plaintiffs occurred in February 2014, when the settlement agreements were reached, and the plaintiffs' complaint was filed more than four years later, in November 2018. It also contended that the plaintiffs lacked standing to pursue claims under the laws of States in which they themselves had not purchased Tracleer.

The district court granted Actelion's motion to dismiss, relying on both grounds. It characterized the plaintiffs' complaint as a refusal-to-deal case in which Actelion's alleged refusals spanned from 2009 to February 2014. And it concluded that "when [a] plaintiff charges a continual refusal to deal, the statute of limitations commences to run from the *last overt act* causing injury to the plaintiff's business" (quoting *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 572 (4th Cir. 1976)), which it identified as the February 2014 settlements. The court rejected the plaintiffs' argument that their claims accrued on November 20, 2015, because the "expiration of the Patent is not an overt act by Actelion." It also rejected the plaintiffs' alternative argument that Actelion was engaged in a continuing violation such that the statutes of limitations began to run from each sale of Tracleer at supracompetitive prices. In doing so, the court concluded — mistakenly — that the complaint did not allege that Actelion "actually" charged supracompetitive prices or that it engaged in "illegal price fixing or predatory pricing," which traditionally have involved continuing violations.

As to the plaintiffs' four remaining claims — those alleging violations of the laws of Maine, Minnesota, Vermont, and Wisconsin (which have six-year statutes of limitations)

9

— the district court held that the plaintiffs lacked standing to bring those claims because they failed to allege that they "suffered any specific harm in Maine, Wisconsin, Minnesota, and Vermont" so as to implicate those States' statutes.

From the district court's order of dismissal dated September 30, 2019, the plaintiffs filed this appeal.

II

With respect to the district court's statute-of-limitations ruling, the plaintiffs contend that the district court committed "three serious errors." First, the court erroneously concluded that "the statute of limitations began to run against [the plaintiffs] before [they] suffered any injury, in clear contravention of the standard antitrust accrual rule." Under that rule, the statute of limitations would begin to run once the plaintiffs were actually injured — that is, once Actelion's patent expired and the plaintiffs paid supracompetitive prices for Tracleer. Second and similarly, the court failed to accept that an action "does not accrue with respect to a plaintiff's damages until those damages become more than speculative," citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 339 (1971). And third, the court "failed to apply the continuing-violation doctrine," under which the statutes of limitations would begin to run from each sale after November 2015 that Actelion made at supracompetitive prices.

Addressing the limitations issues requires an understanding of the nature of the plaintiffs' causes of action and when they accrued. The plaintiffs' principal cause of action is brought under § 4 of the Clayton Act, which provides that "any person who shall be

*injured* in his business or property by reason of anything forbidden in the antitrust laws may sue therefor," 15 U.S.C. § 15(a) (emphasis added), and § 2 of the Sherman Act, which prohibits the willful maintenance of monopoly power, *see id*. § 2. Section 4B of the Clayton Act provides that any such action is "barred unless commenced within four years after the cause of action *accrued*." *Id*. § 15b (emphasis added).[3] The Supreme Court has held that "[g]enerally, a cause of action *accrues and the statute begins to run* when a defendant commits an act that injures a plaintiff's business." *Zenith*, 401 U.S. at 338 (emphasis added). Because a cause of action under § 4 of the Clayton Act vindicates one who is *injured* by a violation of the antitrust laws, it accrues when the plaintiff first suffers injury. *See id.* at 339. Thus, when "a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him." *Id*. Indeed, without injury, a cause of action does not exist and therefore cannot accrue. Following this principle, the *Zenith* Court described its task as determining "whether Zenith could have recovered . . . damages [it suffered during the 1959–1963 period] if it had brought suit for them in 1954, for if it could not, it would follow for the reasons stated above that it must be permitted to recover them now." *Id*. at 340.

In this case, according to the plaintiffs' complaint, the plaintiffs had no cause of action as of February 2014 — when, according to the district court, the last overt act took place. The district court reasoned that this was a refusal-to-deal case and all refusals took place before the 2014 settlements, which were more than four years before suit was filed.

---

[3] We proceed with the understanding that analysis of the statute of limitations under the Clayton Act is the same for each relevant state statute.

11

But the court did not address whether those refusals on or before the February 2014 settlements *injured* the plaintiffs at that time. The district court's reasoning resulted from a misunderstanding of the nature of the causes of action alleged in the plaintiffs' complaint and of the nature of the injury alleged.

The plaintiffs' federal antitrust claims rest on § 2 of the Sherman Act, 15 U.S.C. § 2, which requires them to show (1) that Actelion possessed monopoly power in a relevant market — i.e., the power to control prices or exclude competition — and (2) that it willfully acquired or maintained that power. *See United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). They would also have to show under § 4 of the Clayton Act that they were *directly* — not proximately — injured by the violation. *See* 15 U.S.C. § 15; *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540–46 (1983).

While the plaintiffs' complaint acknowledged that Actelion possessed *legal* monopoly power during the period of its patent license, it alleged that monopolization in violation of § 2 of the Sherman Act occurred following the expiration of the patent in November 2015 and continued for at least three years thereafter, during which Actelion was able to control prices. The complaint alleged that Actelion was able to do so by deliberately delaying competition from generic manufacturers by blocking their ability to develop generic drugs by refusing to sell them the needed samples. While Actelion's refusals might have amounted — at least as claimed by the generic manufacturers — to an abuse of patent monopoly power that injured the generic manufacturers, patent abuse is not the nature of the plaintiffs' alleged claims. The plaintiffs alleged that Actelion willfully

12

maintained illegal monopoly power beginning in November 2015 (after the patent expired) by having excluded competition.

Thus, the antitrust violations alleged by the plaintiffs are that Actelion maintained monopoly power beginning in November 2015, as manifested by the supracompetitive prices it charged them for Tracleer beginning at that point. And as important, the plaintiffs did not allege that Actelion's refusals to provide samples to the generic manufacturers caused them their injury. Rather, that was the means by which Actelion was able to extend illegally its patent monopoly *following the patent's expiration*. Stated differently, the complaint alleged that Actelion began its anticompetitive scheme before the expiration of its patent, when it still had legal monopoly power over sales of Tracleer, but that the scheme had no illegal effect until it exercised its monopoly power beyond November 2015, when the patent expired and it was yet able to charge monopoly prices. Accordingly, it was also only then — in November 2015 — that the plaintiffs could have been injured as a result of Actelion's monopolistic prices. In short, because the plaintiffs were not injured in 2014, they had no cause of action in 2014, and thus limitations could not have begun to run in 2014.

Even were we to assume that in February 2014 the plaintiffs had some form of action — which they did not allege — their claim at that time could only have been for *future* damages occurring after November 2015, and those damages would have been too speculative to recover. In that situation, as *Zenith* teaches, the cause of action would accrue only when such damages occurred:

In antitrust . . . actions, refusal to award future [damages] as too speculative is equivalent to holding that no cause of action has yet accrued for any but those damages already suffered. In these instances, the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any time within four years from the date they were inflicted.

*Zenith*, 401 U.S. at 339; *see also Charlotte Telecasters*, 546 F.2d at 573 ("[A] cause of action for future damages does not accrue until the damages become reasonably ascertainable and, therefore, capable of proof"); *South Carolina v. United States*, 912 F.3d 720, 726, 730 (4th Cir. 2019) ("[A] plaintiff's claim is not ripe for judicial review 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all'" (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013))).

To avoid the consequences of applying these principles, Actelion argues that in February 2014, the plaintiffs "suffered an injury to their *future* economic interests" (emphasis added), thus causing limitations to begin running in 2014. Such an argument, however, would require anticipation of (1) a future antitrust violation, as the plaintiffs alleged, (2) the continued exclusion of generic manufacturers after November 2015, *and* (3) Actelion's continuing ability to charge supracompetitive prices. Relying on "future economic interests" that were dependent on such future events would simply be untenable. If merely an overt act in 2014 without injury were to be the starting gate for limitations to run, then all those who would first suffer antitrust injury more than four years after that overt act "would be forever incapable of recovery." *Zenith*, 401 U.S. at 340. Such a proposition makes no sense, as recognized in *Zenith*.

14

At bottom, the plaintiffs' cause of action, as defined by 15 U.S.C. §§ 2 and 15, accrued when they were injured, and, as they alleged, they were first injured in November 2015. As we have stated, "the four-year statute of limitations began to run [from] *the date of the injury*." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 540 (4th Cir. 1997) (emphasis added); *see also Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 198, 201 (1997) (Scalia, J., concurring).

Quite apart from application of the standard antitrust accrual rule and the correlative speculative-damages doctrine, which render the plaintiffs' action timely, the continuing-violation doctrine would also entitle the plaintiffs to recover damages for each supracompetitive sale that Actelion made after November 2015. As explained in *Zenith*, "[i]n the context of a continuing conspiracy to violate the antitrust laws," the statute of limitations begins to run from "each time a plaintiff is injured by an act of the defendants." 401 U.S. at 338. Specifically, in cases "involving allegations of 'a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, *e.g.*, *each sale to the plaintiff*, starts the statutory period running again.'" *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 290–91 (4th Cir. 2007) (emphasis added) (quoting *Klehr*, 521 U.S. at 189); *see also Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979) ("[E]ach time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act"). Similarly, according to the complaint in this case, each time that Actelion sold Tracleer at a supracompetitive price after its patent expired, it

15

illegally exercised monopoly power — i.e., willfully maintained monopoly power, *Grinnell*, 384 U.S. at 570–71 — thus committing an overt act that caused injury and violated the antitrust laws. Accordingly, a new limitations period began to run from each such sale.

Actelion argues, nonetheless, that these "sales at supracompetitive prices" were merely a holdover "effect" of its earlier settlements in February 2014 and that the sales themselves were not unlawful acts that gave rise to new causes of action. It maintains, as the district court did, that this is a refusal-to-deal case and that post-patent sales to the plaintiffs were not refusals to deal and therefore did not provide the plaintiffs with new causes of action. This, however, does not respond to the plaintiffs' complaint as written. The plaintiffs did not allege that Actelion's refusals to deal excluded them "from participation in an industry," as they would have to allege to state a refusal-to-deal claim; they alleged that they are *customers* of Actelion, *not competitors*. *Charlotte Telecasters*, 546 F.2d at 572; *see also Berkey Photo*, 603 F.2d at 295 ("Although the business of a monopolist's rival may be injured at the time the anticompetitive conduct occurs, a purchaser, by contrast, is not harmed until the monopolist actually exercises its illicit power to extract an excessive price"). The plaintiffs' complaint, instead, alleged conduct more closely analogous to what has been termed a pay-for-delay scheme. *See, e.g.*, *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013). They alleged that Actelion engaged in an "illegal scheme to maintain its monopoly" by "delay[ing] the start of generic drug competition" so that it could "continue [after November 2015] to profitably charge supra-competitive prices." Thus, each time that Actelion sold Tracleer to the plaintiffs at monopoly prices

16

after the patent's expiration, it engaged in a new injurious overt act that commenced a new limitations period. *See Charlotte Telecasters*, 546 F.2d at 572.

Virtually every court faced with similar allegations has held, citing the continuing-violation doctrine, "that a new cause of action accrues to purchasers upon each overpriced sale of the drug." Malla Pollack, 6 *Callmann on Unfair Competition, Trademarks, and Monopolization* § 23:32 (4th ed. 2019); *see, e.g.*, *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 380 (S.D.N.Y. 2002) (finding that the purchaser plaintiffs' claims were timely "based on allegations of injury arising from purchases of [a drug] at allegedly inflated prices beginning four years prior to the filings of their respective Complaints" where purchasers alleged that a settlement agreement kept generic competition out of the market); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551 (D.N.J. 2004) (finding claims timely where the plaintiffs "alleged that they were overcharged and paid supra-competitive prices for [a drug] as a result of Defendants' settlement agreements . . . within the applicable time limitations"); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 400 (D. Mass. 2013) ("[E]very time the Direct Purchasers were overcharged for brand [drug], they suffered a cognizable injury" that accrued a new cause of action); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 746 (E.D. Pa. 2014) ("[A]lleged ongoing sales of [the drug] at a supracompetitive price constitute a continuing violation"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-MD-2343, 2013 WL 2181185, at *29 (E.D. Tenn. May 20, 2013) ("Plaintiffs have sufficiently alleged those acts resulted in Plaintiffs being overcharged for [the drug] well into the limitations period"); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 238 (D. Conn. 2015) (holding that "a purchaser suing a monopolist for overcharges is

17

injured anew by each overcharge"); *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1329 (D. Kan. 2018) ("Defendants engaged in new and additional acts each time they charged the allegedly inflated prices . . . . And each of those acts inflicted a new and accumulating injury on the class plaintiffs"); *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 385 (D.N.J. 2018) ("[T]he Court finds [the plaintiffs'] claims are timely, under the continuing-violation doctrine," for overcharges "as a result of Defendants' settlement agreement").

In sum, we conclude that the plaintiffs have alleged adequate facts in their complaint to demonstrate that their claims were timely filed.

III

The plaintiffs also challenge the district court's dismissal of Counts 6, 10, 33, and 44 of the complaint — involving class members' claims against Actelion under the laws of Maine, Minnesota, Vermont, and Wisconsin — based on a lack of standing. The court explained that the plaintiffs never purchased Tracleer in those States and so never suffered any specific injury entitling them to sue under those States' laws. The district court addressed only those four counts because it had dismissed all other counts of the complaint on limitations grounds. But Actelion's motion to dismiss for lack of standing was directed to all 42 counts of the complaint in which the plaintiffs alleged that *class members*, not the plaintiffs themselves, purchased Tracleer at supracompetitive prices. Our analysis, therefore, applies not only to the dismissal of the four counts, but to all other counts of the complaint that were included in Actelion's motion to dismiss for lack of standing.

18

In its motion to dismiss, Actelion contended that the "plaintiffs' 42 claims arising under the laws of various states (but . . . not California, Florida, and Maryland) must be dismissed for lack of Article III standing." It also contended that those same counts must be dismissed for a lack of "statutory standing." Both arguments were based on the ground that the plaintiffs did not purchase or pay for Tracleer in any of the States involved and therefore that those States' laws were not implicated.

In its ruling, the district court set aside Actelion's argument for lack of Article III standing and grounded its dismissal on "Actelion's standing arguments through the lens of statutory standing" only. It explained that the "Plaintiffs fail[ed] to allege . . . that [they] suffered any specific harm" in those States; they alleged only that they purchased Tracleer "in Maryland, California, and Florida." Actelion has not challenged the district court's approach on appeal, although it also has not abandoned any lack-of-standing argument it has.

To begin, it is important to note that the plaintiffs sued on their own behalf and purportedly, under Rule 23, on behalf of all others similarly situated. But that putative class has not been certified, and therefore, Actelion's motion to dismiss for lack of standing could only be directed to the plaintiffs' claims under the laws of States other than Maryland, California, and Florida. It is undisputed that the plaintiffs alleged purchases of Tracleer in only those three States and did not allege that it made purchases of Tracleer in the other States. In those other States, the plaintiffs asserted claims based on *class members'* purchases of Tracleer.

19

To have Article III standing, the plaintiffs "must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (emphasis added) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (requiring that plaintiffs show injury, causation, and redressability). But even when plaintiffs have suffered such a necessary injury, they must also have so-called statutory standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 & n.2 (1998) (stating that unlike Article III standing, statutory standing considers "whether [a] cause of action exists under a particular statute").

To demonstrate statutory standing, the plaintiffs must show that they satisfy the statutory requirements of the laws of the States they are invoking. *See CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014) (noting that the statutory standing "label" can be "misleading" because it "does not implicate [a court's] subject-matter jurisdiction" (cleaned up)). In this case, the plaintiffs did not allege facts to show that they satisfied the statutory requirements of States other than Maryland, California, and Florida. Consequently, the plaintiffs may not seek relief for their own injuries under those States' statutes, and the district court's determination as to the plaintiffs' own statutory standing was proper. *CGM*, 664 F.3d at 52 ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim" (cleaned up)).

20

Nonetheless, the claims that the plaintiffs made on behalf of class members who purchased Tracleer in States other than Maryland, California, and Florida need not be stricken or disregarded. Since those counts of the complaint define *class members'* claims, they may be considered in determining whether the plaintiffs' claims raise "questions of law or fact common to the class" and whether these are "typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a), and also whether the common questions "predominate," Fed. R. Civ. P. 23(b)(3); *see also Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93 (2d Cir. 2018) ("[W]hether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)"); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49–51 (1st Cir. 2018). If the Rule 23 requirements are met, the plaintiffs could then represent the class members who sustained damages under those laws. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011).

\* \* \*

In vacating the district court's order of dismissal, we do not suggest any outcome on the plaintiffs' claims. Their complaint contains only allegations that have yet to be proven or tested. Indeed, even a statute-of-limitations defense, if pleaded as an affirmative defense, may yet be vindicated. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007) (en banc). And it goes without saying that class certification will present complex issues, none of which have, at this point, been addressed or resolved. So we now tell the parties to return to the district court and go to it.

VACATED AND REMANDED
FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION